```
                     UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION
```

BRYAN FONTAINE,                :    NO. 1:05-CV-00335
                               :
    Plaintiff,                 :
                               :
    v.                         :    **OPINION AND ORDER**
                               :
CLERMONT COUNTY BOARD          :
OF COMMISSIONERS, et al.,      :
                               :
    Defendants.                :

       This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 19), Plaintiff's Response in Opposition (doc. 23), and Defendants' Reply (doc. 25). For the reasons stated herein, the Court GRANTS Defendants' Motion for Summary Judgment and DISMISSES this case from the Court's docket.

**I. BACKGROUND**

       Plaintiff Bryan Fontaine, formerly a maintenance worker for the Clermont County, Ohio, Sewer District ("Sewer District"), a department of Defendant Clermont County Board of Commissioners ("Board"), alleges the Board administered a constitutionally unreasonable search when they required him to undergo drug testing in 2003 (doc. 1). After Plaintiff failed the drug test, Defendants terminated his employment on September 9, 2003 (Id.). Plaintiff subsequently brought this lawsuit, pursuant to 42 U.S.C. § 1983, seeking, among other relief, lost pay and benefits, compensatory damages, reinstatement, and promotion (Id.). While the lawsuit was pending, Plaintiff learned of two job postings with the Board, for

which he was qualified, and for which he applied in 2006 (Id.). Plaintiff interviewed, submitted to drug testing and physical examination, and avers that Defendants' Personnel Department told him he could start on February 27, 2006 (doc. 12). On March 1, 2006, Defendants voted not to appoint Plaintiff to either of the two positions (Id.). Defendants chose instead to appoint two then-current employees who were accepting demotion to the positions (doc. 19). Plaintiff thereafter amended his Complaint to include new claims[1] for first amendment retaliation and for breach of Ohio public policy, under the theory that Defendants refused to hire him because of his pending lawsuit challenging the 2003 drug test (doc. 12).

On September 19, 2006, Defendants filed their Motion for Summary Judgment, arguing that no material issues of fact exist with regard to Plaintiff's claims (doc. 19). Defendants argue they were within their rights to conduct the 2003 drug testing and to choose not to hire Plaintiff in 2006, there is no official or individual capacity liability, and therefore they are entitled to judgment as a matter of law (Id.). Plaintiff filed his Response, arguing the Board subjected him to unnecessary and suspicionless

---

[1] Plaintiff also added claims for violation of his rights to equal protection, for conspiracy to deprive him of his constitutional rights, and for promissory estoppel. Because Plaintiff abandoned such claims in his Response (doc. 23), the Court need not consider the parties' arguments concerning such claims.

2

drug testing to which he did not consent (Id.). He further argues they denied him the due process of a predisciplinary hearing, and their inconsistent statements regarding their failure to hire him establish a genuine issue as to whether his lawsuit motivated their refusal to hire him (Id.). Defendants filed their Reply, and this matter is ripe for the Court's review.

## II.  APPLICABLE LEGAL STANDARD

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

3

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment. . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary

4

matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted

5

evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. DISCUSSION**

As an initial matter, the Court notes that the parties devote considerable argument to the legal question of Plaintiff's status as a public or private employee, based in part on the history of the Board's management of the sewer district, which included three years, from 2000 to 2003, when the Board contracted out the operation of the sewer district to a private contractor, Earth Tech, Inc., ("Earth Tech"). The Court rejects Plaintiff's contention in his Response, (doc. 23), that he remained a public employee from 2000 to 2003, which he premises on public employment

6

retirement provisions ("PERS") in Ohio Revised Code § 145 that provide "public employee" means:

> A person who is a member of the public employees retirement system and who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function. The governmental unit with which the contract has been made shall be deemed the employer for the purposes of administering this chapter.

Ohio Revised Code § 145.01(A)(2). Clearly this provision applies to Plaintiff, and for the "purposes of administering" PERS, he is considered a public employee during the time he worked for Earth Tech. However, neither the Ohio Revised Code, nor the cited opinion from the Ohio Attorney General, 72 Op. Att'y Gen. Ohio 55 (1972), in any way broaden the status of this class of employees beyond the scope of the retirement system provisions. Defendant proffers evidence showing it terminated Plaintiff, along with numerous other sewer district employees, paying them for accumulated vacation and unused sick leave, as well as a payment for each year of service (doc. 19). Defendant further proffers evidence that when it transferred the operation of the sewer district to Earth Tech, it contracted such that Earth Tech would hire and retain the employees the Board was letting go (Id.). The Court finds no genuine dispute as to the question of Plaintiff's status: he was a public employee from 1982 until the Board terminated his employment in 2000. This conclusion affects the Court's analysis of both of Plaintiff's claims. First, it bears on

7

the question of the reasonableness of the Board's action in administering the 2003 drug test to Plaintiff, and to other applicants from Earth Tech, when it ended its contract with Earth Tech and re-assumed the management and operation of the sewer district. Second, it takes the analysis of Plaintiff's retaliation claim outside the scope of Connick v. Myers, 461 U.S. 138, 140 (1983), as Plaintiff need not establish Defendant retaliated against him for speaking out about a matter of public concern. Having thus concluded, the Court can proceed more efficiently to the analysis of Plaintiff's claims.

**A. Plaintiff's Fourth Amendment Claim**

Plaintiff brings his Fourth Amendment claim pursuant to 42 U.S.C. § 1983. Accordingly, he must allege (1) the deprivation of a right secured by the federal Constitution or laws of the United States, and (2) that the deprivation was caused by a person while acting under color of state law. Christy v. Randlett, 932 F.2d 502, 504 (6th Cir. 1991). "Absent either element, a section 1983 claim will not lie." Id. The question before the Court is whether Defendants deprived Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures when they asked him to undergo urinalysis before hiring him in 2003. Urinalysis required by a government employer for the purpose of detecting illegal drug use is a search protected by the Fourth Amendment. Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 617-18

(1989). The Fourth Amendment, however, does not proscribe all searches, but only unreasonable ones. The reasonableness of a search "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests." <u>Skinner</u>, 489 U.S. at 619.

The record in this case shows that Plaintiff took three drug tests: first, when he left the Board's employment and commenced work with Earth Tech in 2000, second, when he left Earth Tech to return to the Board in 2003, and third, in 2006 when he re-applied for employment with the sewer district (doc. 19). Plaintiff challenges the reasonableness of the second test, the only one he did not pass.

Plaintiff submitted his job application to the Board in July 1, 2003, for a "Maintenance 2" position, while he was still employed by Earth Tech (doc. 19). The Maintenance 2 position required applicants to possess a valid Ohio commercial driver's license ("CDL")(<u>Id</u>.). The last page of the application stated:

> I further understand that Clermont County requires a drug test for illegal substances, and that Clermont County will not hire any applicant who tests positive or refuses to consent to pre-employment drug testing.

On August 27, 2003, nearly two months later, Plaintiff took the drug test (<u>Id</u>.). Plaintiff began work for the Board on September 1, 2003, but after the test results, on September 9, 2003, the Board took formal action to rescind Plaintiff's offer of employment (<u>Id</u>.).

9

Defendants argue the totality of the circumstances show that Plaintiff consented to the August 2003 drug screen, and therefore the testing was constitutional (Id. citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1972)). Defendants further argue, citing Skinner, 489 U.S. 602, that they were obliged to conduct such testing as Plaintiff's position was safety-sensitive (Id.). Moreover, Defendants argue that because the Maintenance 2 position Plaintiff sought required he hold a CDL, Defendants were required to subject him to pre-employment drug testing (Id. citing 49 C.F.R. 382.301(a)). Indeed, the applicable federal regulations require employers of CDL holders to perform random drug testing (Id. citing 49 C.F.R. 382.305)).

From Plaintiff's perspective, the record shows he had a twenty-two year record of satisfactory work performance in his position, which stayed the same even under Earth Tech's management (doc. 23). Defendant had no reason to suspect he was using drugs (Id.). The testing he underwent, he argues, is akin to that which the Tenth Circuit found unreasonable in Rutherford v. City of Albuquerque, 77 F.3d 1258, 1259 (10th Cir. 1996)(finding unreasonable drug testing, with no advance warning, on an employee of ten years, whose new position involved no change in status or safety sensitivity, and who had demonstrated no signs of alcohol or drug abuse)(Id.). Plaintiff further argues that the question of whether he consented to a search is a factual question determined

10

by the totality of the circumstances (Id. citing Schenkloth, 412 U.S. at 226; Feliciano v. City of Cleveland, 661 F.Supp 578, 593 (1987)). In this case, he argues he did not unequivocally consent to drug testing (Id.). Finally, Plaintiff argues the Court should reject Defendants' contention that they were obligated to perform drug testing based on the regulation of CDL's because Plaintiff was already subject to a regimen of drug testing to maintain his CDL, and in his view, there is a genuine issue as to whether he was a new employee whom they could justify testing under 49 C.F.R. 382.320(a) and 382.301 (Id.).

The Court finds no genuine dispute as to the fact that Plaintiff consented to drug testing in this case. The record shows he initialed his agreement to consent to drug and alcohol testing on both July 1, 2003 and February 1, 2006 (doc. 19, Exhibits G,H). Unlike the Plaintiff in Rutherford v. City of Albuquerque, 77 F.3d 1258, 1259 (10th Cir. 1996), Plaintiff here had nearly two months notice prior to the drug screening he challenges as unreasonable. The test was not sprung upon him without warning. Plaintiff had already submitted to a test in the past, without complaint, and indeed, as signaled by Defendants, did so again in 2006 when he reapplied for employment.

Even should the Court's determination be incorrect that Plaintiff consented to testing, the nature of the Maintenance 2 position, in involving highly regulated functions, distinguishes it

from a case like <u>Feliciano v. City of Cleveland</u>, 661 F.Supp at 591 (1987). Plaintiff in no way addressed Defendant's assertion that federal regulations actually require random drug testing of employees in the Maintenance 2 position, 49 C.F.R. 382.305. Moreover, here, although Plaintiff argues he really was not a new employee, as evidenced by his long track record of service distinguishing him from an unknown applicant, the Court finds that as a matter of law he was a new employee. As determined above, his employment with the Board ended in 2000. The Board was therefore justified in requiring pre-employment drug screening when he applied to work with them again in both 2003 and 2006. 49 C.F.R. 382.301(a)(requiring pre-employment drug testing "[p]rior to the first time a driver performs safety-sensitive functions for the employer").

Here, the job Plaintiff sought required that he operate equipment, including jet trucks, tractors, and backhoes (doc. 19, Exhibit H). The job further required that he maintain a CDL. (<u>Id</u>.). The Court concludes the Board's legitimate government interests in having drug-free employees operating such equipment, and its duty to conduct random testing on those employees holding CDL's, provide ample justification for the drug testing here that outweighs Plaintiff's Fourth Amendment interests. <u>Skinner</u>, 489 U.S. at 619. The Court simply cannot find unreasonable the drug testing under these circumstances.

12

**B. Plaintiff's Retaliation Claim**

Plaintiff further alleges that Defendants retaliated against him by refusing to hire him in 2006 because of his lawsuit against them challenging the constitutionality of his 2003 drug test (doc. 14).  He argues that Defendants' actions violate his First Amendment right to access the courts (doc. 19).  "In order to state a retaliation claim under the First Amendment a plaintiff must show that: '1) [he] engaged in constitutionally protected speech; 2) [he] was subjected to adverse action or was deprived of some benefit; and 3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action.'" Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003)(quoting Brandenburg v. Housing Auth. of Irvine, 253 F.3d 891, 897 (6th Cir. 2001) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

As noted by the Ninth Circuit, in Ruggles v. California Polytechnic State University, No. 84-6223, 1986 U.S. App. LEXIS 36874, *7 (9th Cir. August 19, 1986), "Seldom does an applicant for a job have a pre-existing employment relationship such that the failure to hire is retaliatory rather than discriminatory."  The Ruggles court found such a factual situation to be one of first impression, and specified that after a Plaintiff establishes a prima facie case, the burden of production shifts to the Defendant to articulate some legitimate, nondiscriminatory reason for the

13

adverse employment decision. Ruggles, 1986 U.S. App. LEXIS 36874 at *10. Should the Plaintiff succeed in demonstrating that the Defendant's proffered explanation is merely pretext for retaliation, a presumption is created that the failure to hire was the product of retaliatory intent. Id. citing U.S. Postal Service Bd. of Govs. v. Aikens, 460 U.S. 711, 714-15 (1983), Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981), Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977). The Defendant may rebut this presumption by showing by clear and convincing evidence that it would not have hired Plaintiff even in the absence of retaliatory intent. Mount Healthy City Board of Education, 429 U.S. at 285-87.

Defendants in this case framed their attack on Plaintiff's retaliation claim within the theory that because such claim is not a matter of public concern, they are not liable (doc. 19, citing Connick v. Myers, 461 U.S. 138, 146 (1983), Collins v. Allen, 2006 U.S. Dist. LEXIS 61192 (S.D. Ohio 2006)). Plaintiff responded, arguing that he has established a genuine issue of fact as to whether his lawsuit was a motivating or substantial factor in Defendants' failure to hire him (doc. 23). Plaintiff specifically argues that Clermont County Commissioner Robert Croswell "admitted" that he and the other commissioners would have "rubber stamped" the recommendation of the Assistant Director of the Sewer District, Steven Knipp, to hire Plaintiff "but for the litigation" (Id.).

14

Plaintiff states the Commissioners "are not in agreement as to the reason for the decision to hire [the two individuals they chose] instead of Mr. Fontaine" (Id.). Plaintiff argues the Commissioner's allegations that they made their decision based upon objective qualifications are incredible in light of their admission they knew nothing of Mr. Fontaine's 22 years of job experience (Id.).

The Court has already determined that Plaintiff was not a public employee at the time he applied for the Maintenance 2 position with Defendants. For this reason, the Court does not find apposite Defendants' analysis based on First Amendment rights of public employees. The Court is not persuaded by Defendants' argument in their Reply, that the same First Amendment standard--requiring the challenged speech to relate to a matter of public concern--applies to private individuals as to public employees. The Court finds rather that "[p]laintiffs [have] a clearly established right to be free from retaliation for exercising their right of access to the courts." Warmus v. Hank, Nos. 93-1619/93-1620, 1995 U.S. App. LEXIS 4208, *33 (6th Cir. February 28, 1995), and that the proper analysis here is to determine whether Plaintiff establishes his prima facie case for retaliation, and if so, whether Defendants offer a legitimate nondiscriminatory justification for their decision not to hire Plaintiff.

The Court finds no question that Plaintiff meets the first two parts of his prima facie case: he engaged in protected activity by filing his lawsuit, and the position he sought was eliminated as to him.  The remaining question therefore is whether a jury could find a genuine issue as to whether there was a nexus between Defendants' decision not to hire him, and his lawsuit.  Plaintiff argues the facts show that Commissioner Croswell admitted as much, and that inconsistencies in statements of the commissioners show the real reason they chose other candidates was not the objective qualifications of those candidates.  Plaintiff did not specify where Croswell's alleged admission could be found in the record, and the Court has scrutinized Croswell's deposition testimony.  Such testimony is actually consistent with that of Commissioner Walker–both commissioners state that Plaintiff scored fourth, slightly behind the other candidates, in the evaluation of the applicants.  Both also expressed concerns about Plaintiff's attitude and dress at his interview.  Commissioner Croswell stated he did not want to hire a less-qualified candidate, Plaintiff, simply to appease him and make the lawsuit go away.  The evidence in the record does not show the commissioners harbored any ill will toward Plaintiff for his having challenged the 2003 drug testing.  Finally, Commissioner Croswell expressed a preference for hiring equally qualified internal candidates over external candidates, consistent with the actual result in this case.  Courts have found

16

preferences for equally qualified in-house candidates legitimate. Carlisle v. City of O'Fallon, No. 4:06-CV-643, 2007 U.S. Dist. LEXIS 56069, *20 (E.D. Mo. August 1, 2007)(court accepted the argument that the City's preference for in-house hire could be legitimate), Glab v. California State Board of Equalization, No. 96-C-3917, 1997 U.S. Dist. LEXIS 16684 *20-21 (N.D. Il. October 27, 1997)(Court did not question the validity of policy for hiring preference of in-house candidates over equivalent outside candidates although finding no such policy existed in the case), Chennareddy v. U.S. General Accounting Office, 865 F.2d 1329 (D.C. Cir. 1988)(appointing official exercised legitimate preference for an internal promotion over a less-known applicant from another division).

     A review of the record reveals no genuine dispute that Defendants chose in-house candidates who scored higher than Plaintiff. These are legitimate non-discriminatory reasons for the hiring decision Defendants made. Plaintiff has not shown that such reasons have no basis in fact or are not the real reasons for Defendants' decision. Consequently, the Court concludes that no presumption is created that Defendants' failure to hire Plaintiff was the product of retaliatory intent. U.S. Postal Service Bd. of Govs., 460 U.S. at 714-15.

**C. Plaintiff's Ohio Public Policy Claim**

Plaintiff's Ohio public policy claim is co-extensive with his Section 1983 retaliation claim, which the Court has found lacking in merit. In any event, consistent with this Court's ruling in Bools v. General Electric, 70 F. Supp. 2d 829 (S.D. Ohio 1999), there is no cause of action under Ohio law for retaliation or for wrongful failure to hire in violation of public policy. Accordingly, this claim is dismissed.

**D. Official and Individual Capacity Liability**

Defendants are correct that Plaintiff's claims against the individually named Defendants in their official capacities are properly construed as being directed solely against Defendant Clermont County Board. Brandon v. Holt, 469 U.S. 464, 471 (1985). However, Plaintiff has made no showing of an unconstitutional policy of unreasonable pre-employment drug testing. Therefore the Court finds neither liability for the Board, nor for any of the individual Defendants. Each Defendant is entitled to qualified immunity in their respective individual capacities, as no constitutional violation has occurred in this matter. Spurlock v. Satterfield, 167 F.3d 995, 1005 (6th Cir. 1999).

**E. Due Process Violation**

Plaintiff did not make a claim for a due process violation in his Amended Complaint but now asserts in his Response that Defendants are liable to him for failing to grant him a pre-

18

disciplinary hearing before terminating him in 2003 for failing the drug test. The proper means to add a claim is through a motion to amend the Complaint pursuant to Fed. R. Civ. P. 15. Such claim is not properly before the Court. Even had Plaintiff properly amended his Complaint, Defendants offer clear and persuasive authority under Ohio Revised Code § 124.27(C) that Plaintiff was in his probationary period when he failed the drug test, and therefore not entitled to the process he now complains Defendants denied.

**IV. CONCLUSION**

Having reviewed the matter, the Court finds Defendants' Motion for Summary Judgment well-taken. Plaintiff has neither established a genuine issue of material fact as to his fourth amendment or retaliation claims. Defendants were within their rights to administer drug testing of Plaintiff in 2003, and to hire other applicants for the position he sought in 2006. The facts show Plaintiff consented to the drug testing he now challenges, and further that such testing was appropriate for the type of safety-sensitive and regulated position he was seeking with the Sewer District. The facts further show that when Plaintiff applied for employment in 2006, Defendants chose two in-house candidates who scored higher on Defendants' applicant evaluation. Rather than capitulating to Plaintiff and hiring him out of fear of a retaliation claim, Defendants chose instead the candidates they found the most qualified.

Accordingly, for the reasons indicated herein, the Court GRANTS Defendants' Motion for Summary Judgment (doc. 19), and DISMISSES this case from the Court's docket.

SO ORDERED.

Date: September 6, 2007         /s/ S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge